UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FEDERAL INSURANCE COMPANY,

        *Interpleader Plaintiff,*

        v.

PIXARBIO CORPORATION, FRANCIS
REYNOLDS, KENNETH STROMSLAND, THE
MINTZ FRAADE LAW FIRM P.C., BALLARD
SPAHR, LLP, CARTER, LEDYARD &
MILBURN LLP, CONRAD O'BRIEN P.C.,
OBERMAYER, REBMANN, MAXWELL &
HIPPEL, LLP, and EVIDOX, LLC

        *Interpleader Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM DECISION AND
ORDER
20 Civ. 4659 (GBD)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: MAR 0 3 2022

GEORGE B. DANIELS, District Judge:

        Plaintiff Federal Insurance Company ("Federal") brings this statutory interpleader action

against Defendants PixarBio Corporation ("PixarBio"), Francis Reynolds ("Reynolds"), Kenneth

Stromsland ("Stromsland"), the Mintz Fraade Law Firm P.C. ("Mintz"), Ballard Spahr LLP

("Ballard"), Carter, Ledyard & Millburn LLP ("Carter"), Conrad O'Brien P.C. (Conrad"),

Obermayer, Rebmann, Maxwell & Hippel LLP ("Obermayer"), and Evidox LLC[1] (collectively,

"Defendants" or "Claimants"). (Summons and Complaint (the "Complaint"), ECF No. 1-1.)

Defendants are law firms, vendors, or individuals covered by or asserting claims to the funds in

Federal's $5,000,000 Securities Liabilities Insurance Policy that was issued to PixarBio. (*Id.* at 1-

2, 5.) Federal requests a determination of the Defendants' respective rights as to the remaining

insurance policy proceeds of $704, 327.91. (*Id.* at 4-6.) The interpleader suit was permitted to

---

[1] On December 7, 2020, Xcellence, Inc. (d/b/a Xact Data Discovery) substituted as Interpleader Defendant for
Evidox LLC. (Memorandum Decision and Order, ECF No. 41.)

proceed. Federal was ordered to deposit the funds and was dismissed from this action. (Order for Deposit and Dismissal, ECF No. 138.)

The law firm defendants have coalesced to settle a current controversy regarding whether Mintz has an entitlement to any payment from the interpleaded funds. Before this Court are motions for summary judgment on this issue submitted by (1) Stromsland and Carter LLP; (2) Ballard, which Obermayer, Stromsland, and Carter LLP join in part; and (3) Mintz. (Stromsland and Carter LLP's Mot. for Summ. J., ECF No. 66; Ballard's Mot. for Summ J., ECF No. 72; Obermayer's Mot. for Summ. J, ECF No. 83; Stromsland and Carter LLP's Joinder re Ballard's Mot for Summ. J., ECF No. 93; Mintz's Mot. for Summ. J., ECF No. 84.) For the reasons set forth below, Ballard's motion is GRANTED to the extent that Mintz is declared to have no claim to the remaining proceeds because it represented clients when there was an unwaivable conflict of interest. All other motions are DENIED.

## I. FACTUAL BACKGROUND

The facts below are from the parties statement of facts and supporting exhibits. Many of the material facts are not in dispute as the parties' arguments are presented.

### A. PixarBio and Mintz Background

PixarBio is a pharmaceutical company that became a publicly traded company regulated by the Securities and Exchange Commission ("SEC") in October 2016. (Mintz Rule 56.1 Statement, ECF No. 88, at ¶ 1.) Reynolds was the founder and CEO; Stromsland was the Chief Information Officer and Vice President of Investor and Public Relations. (*See* Ballard's Rule 56.1 Statement, ECF No. 78, at ¶ 3; ECF No. 88 at ¶ 6.) Mintz began providing various legal services to PixarBio in May of 2016. (Dec. of Alan Fraade, ECF No. 85, at ¶ 4.) It is in dispute, however, whether Mintz assisted PixarBio in its transition to becoming a public company or provided any securities

2

advice from June 27, 2016 to October 21, 2021. (*See* Ballard's Response to Mintz's Rule 56.1 Statement, ECF No. 109, at ¶ 1.)

## B. The SEC Investigation

"In or prior to December 2016," the SEC opened an investigation into PixarBio, Reynolds, Stromsland, and other officers for potential securities fraud (the "SEC Investigation"). (ECF No. 88 at ¶ 2.) PixarBio and Mintz became aware of the investigation on January 23, 2017. (ECF No. 88 at ¶ 2.) Then, in a letter dated February 1, 2017, the SEC informed Mintz that it believed Mintz advised PixarBio on some of the security transactions under investigation. (Stromsland Retainer and Waivers, ECF No. 110-4, at 14-15.) Mintz was informed of the SEC's interest in its conduct again on March 27, 2017 via email, on July 13, 2017 at the deposition of Alan Fraade (a named Mintz partner), and on February 15, 2018 via email. (ECF No. 110-4 at 16, 25; Dec. of David L. Axelrod, Ex. A, ECF No. 82-1, at 6:1-18.) During the investigation, Reynolds and Stromsland also provided deposition testimony to the SEC. (ECF. 78, at ¶ 8.) Mintz represented PixarBio, Reynolds, Stromsland, and other corporate officers in the SEC Investigation. (ECF No. 88 at ¶ 3.)

The SEC Investigation culminated in the SEC filing a lawsuit against PixarBio, Reynolds, Stromsland, and other company officers in April 2018 (the "SEC action).[2] (ECF No. 88 at ¶ 3-6.) In June 2019, the SEC also brought a securities fraud lawsuit against the named partners of Mintz, Frederick Mintz and Alan Fraade, for securities fraud, which resulted in the resignation of both Frederick Mintz and Alan Fraade from the practice of law.[3] (*See* Answer to Compl., Ex. 2, ECF

_____

[2] There were also three other relevant related legal matters: an April 2018 criminal securities fraud action against Reynolds and Stromsland (the DOJ Action"); a putative derivative lawsuit against PixarBio, Reynolds, Stromsland, and other PixarBio officers commenced on May 2, 2017 (the "Derivative Action"); and a putative class action against the same commenced on January 25, 2017 (the "Class Action") (collectively, "related matters"). (*See* ECF No. 88 at ¶ 3-7; *see also* ECF No. 85 at ¶ 5-6, 9.)

[3]The SEC charged Fraade and Mintz with violations of the anti-fraud and registration sections of federal securities laws while representing PixarBio. (Answer to Compl., Ex. 2, ECF No. 10-2; *Securities and Exchange Commission*

No. 10-2.) It is unknown whether the SEC's lawsuit against Frederick Mintz and Alan Fraade emanated from the SEC Investigation.

## C. Conflict of Interest and Waivers

On January 31, 2017, Mintz entered into retainer agreements with PixarBio, Reynolds, and Stromsland ostensibly waiving potential conflicts of interest regarding any competing interests between Mintz's clients with respect to the SEC Investigation.[4] (*See* ECF No. 110-4 at 1.) The agreement, however, did not specifically address any possible future conflicts regarding Mintz's own conduct related to "one or more of the transactions" at issue.[5] (ECF No. 110-4 at 1-6, 14-17.)

There is no indication that Mintz discussed the conflict concerns pertaining to the SEC's interest in Mintz's own conduct with Reynolds or PixarBio. There is also no indication that Mintz raised the SEC's concerns with Stromsland after the February 1, 2017 letter. However, after two more additional emails from the SEC in March and April of 2017, Mintz discussed the potential conflict with respect to the SEC's interest in Mintz with Stromsland. (ECF No. 110-4 at 12-13, 16.) In a letter dated April 25, 2017, Mintz purportedly provided Stromsland copies of SEC's February letter and March email raising the SEC's conflict concerns. (ECF No. 110-4 at 10-11.) After receiving Mintz's letter, Stromsland consented to Mintz's continued representation of him

---

*v. Henry Sargent et al.*, No. 19-cv-11416 (D. Mass.).) Mintz and Fraade entered an entry of Final Judgment to close the matter. (*See* ECF No. 78 at ¶ 19.) On November 19, 2019, the New York Attorney Grievance Committee opened individual investigations into Fraade and Mintz for alleged professional misconduct. As a result of the investigation, Fraade and Mintz officially resigned from the practice of law. *See Matter of Fraade*, 112 N.Y.S.3d 100 (N.Y. App. Div. 1st Dept. 2019) and *Matter of Mintz*, 112 N.Y.S.3d 130 (N.Y. App. Div. 1st Dept. 2019).

[4] PixarBio, Reynolds, Stromsland, and other corporate officers also signed waivers in relation to Mintz Law Firm's representation of its clients in the Class Action and the Derivative Action. (ECF No. 88 at ¶ 8-10.)

[5] The retainer only speaks of possible future conflicts and reserves the right on behalf of the law firm to determine the conflicts. (*See* ECF No. 110-4 at 1.)

4

in the SEC Investigation. (*Id.*) It is unclear when, but at some point after the April 25, 2017 letter, the SEC continued to raise its concerns about Mintz's representation of Stromsland because of Mintz's involvement in the underlying securities transactions and Mintz's clients diverging interests. (*Id.* at 17.) Mintz purportedly raised these conflict issues with Stromsland again via in-person conversations, as memorialized in a letter dated May 17, 2017 (the "May letter"). (ECF No. 110-4 at 17.) The May letter, however, only referenced conflict issues regarding the adverse interest of Mintz' other clients and did not specifically identify the SEC's interest in Mintz's conduct. (*Id.*) After the SEC noted the same concerns in another email dated February 15, 2018, Mintz directly addressed all conflict issues with Stromsland in a March 29, 2018 letter. (ECF No. 110-4 at 19-20, 25-26.) Stromsland again consented to Mintz's continued representation. (ECF No. 110-4 at 19-20.)

Mintz represented PixarBio, Stromsland, Reynolds, and other officers of PixarBio in the SEC Investigation up until April 2018. Stromsland switched counsel in April of 2018 and retained Defendant Carter LLP to represent him in the SEC Investigation and related matters.[6]  (Carter LLP's Rule 56.1 Statement, ECF No. 68, at ¶ 2.) Reynolds changed counsel in August 2018 when he retained Ballard to represent him in the SEC action and other relevant matters.[7]  (ECF No. 78 at ¶ 12.) PixarBio retained Obermayer to represent it in the SEC Investigation in or about September 2018. (Complaint at ¶ 22.)

### D. The Insurance Policy

Federal issued a $5,000,000 Securities Liability Insurance Policy (the "Policy") to PixarBio. (Complaint at ¶¶ 29-30.) The policy covered the legal representation of PixarBio,

---

[6] Carter LLP continues to represent Stromsland and does so in this action. (ECF No. 68, at ¶ 2.)

[7] There now seems to be a rift in this attorney-client relationship. (*See* Letter from Francis Reynolds, ECF No. 125.)

Reynolds, and Stromsland in the SEC Investigation and related matters. (*See* ECF No. 78 at ¶ 27.) To date, Federal has allegedly paid $4,295,672.09 of the Policy proceeds in connection with the legal representation of PixarBio, Reynolds, and Stromsland in the SEC Investigation and related matters. (*See* ECF No. 1-1 at ¶ 28.) Federal paid Mintz twice in September 2018, and once in October 2018 in amounts totaling $139,023.16. (ECF No. 88 at ¶ 17.) PixarBio also executed two stock purchase warrants that authorized Mintz to later purchase shares of PixarBio. (*See* Ballard's Mem. of Law for Summ. J., ECF No. 76 at 15.) It is in dispute whether these warrants were issued specifically to pay for legal services rendered by Mintz in the SEC Investigation and related matters. (*See* ECF No. 109 at ¶ 20.) The record does not specify any amounts already paid to the other law firms.[8]

## E. Procedural History

On March 12, 2020, Federal brought the immediate statutory interpleader action to deposit the remaining liability insurance policy funds for fair and equitable distribution to the Defendants.[9] Each of the Defendant law firms and vendors seek payment from the remaining proceeds in the policy.[10] (*See* ECF No. 76 at 8.)

On August 2, 2021, Carter LLP moved for summary judgment declaring that Mintz has no right to payment from the remaining monies in the policy because of its ethical violations for a failure to obtain acceptable waivers from its clients. (*See* Carter LLP's Mem of Law in Supp. of Mot. for Summ. J., ECF No. 69, at 3-8.) Ballard also moved for summary judgment declaring that

---

[8] For instance, Ballard claims it is still owed $573,470.26. (See ECF No. 76 at 8.)

[9] Federal originally brought this action in New York state court pursuant to N.Y. Civ. Proc. Law and Rules §1006 (i). (ECF No 1-1 at ¶ 34.) Ballard then removed this action pursuant to the Court's original jurisdiction under 28 U.S.C. § 1335. (Notice of Removal, ECF No. 1 at ¶ 13.)

[10] Federal has already been ordered to distribute the remaining funds to the Clerk of Court and discharged of all liability in connection with any and all current and/or future claims to the proceeds. (ECF No. 138.)

Ballard is entitled to full payment of its outstanding legal bills and that Mintz is barred from the policy proceeds. (*See* ECF No. 76 at 9-24.) Ballard raised points similar to those in Carter LLP's motion, but also argued separate issues related to collateral estoppel, unclean hands, and whether Mintz has already been paid in full. (*See Id.*) Obermayer and Carter LLP joined the part of Ballard's motion declaring that Mintz has no right to the policy funds. (*See* ECF Nos. 83 and 92.) Ballard also moved for summary judgement dismissing Mintz's crossclaims against it. (*See* ECF No. 76 at 24-29.) On August 2, 2021, Mintz filed for summary judgment dismissing the ethics allegations made against the firm by Ballard and Carter LLP. (*See* Mintz's Mem of Law in Supp. of Mot. for Summ. J., ECF No. 87.)

## II.   LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit under the governing law." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle*, 313 F.3d at 682 (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)),

and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed.*
*Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114
(2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its
pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this
regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also
insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*,
315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

        In determining whether a genuine issue of material fact exists, a court must construe the
evidence in the light most favorable to the opposing party and draw all inferences in that party's
favor. *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003)
(quoting *Anderson*, 477 U.S. at 252). However, "a court must not weigh the evidence, or assess
the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir.
2016) (citation and internal quotation marks omitted). Summary judgment is therefore "improper
if there is any evidence in the record that could reasonably support a jury's verdict for the non-
moving party." *Marvel*, 310 F.3d at 286.

        **B. Authority in Interpleader Action.**

        "Interpleader is an equitable action, the maintenance of which is subject to the discretion
of the court." *United Artists Corp. v. Fields Prods., Inc.*, 363 F. Supp. 903, 906 (S.D.N.Y. 1973);
*see also, Am. Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990) (""[I]t it is well recognized that
interpleader is an equitable remedy."). This includes a district court's determination on how to
disburse interpleaded funds. *See Vetter v. McAtee*, 850 F.3d 178, 186 (5th Cir. 2017) ("The
disbursement of funds interpleaded into the registry of the court is "equitable in nature.") A district
court's equitable powers allow it to deny a party's recovery from interpleaded funds or to declare

                                            8

who has priority to interpleaded funds. *See Marine Indem. Ins. Co. of Am. v. Lockwood Warehouse & Storage*, 115 F.3d 282, 285-89 (5th Cir. 1997) (district courts have the discretion to deny a party entitlement to interpleader funds and declare who has priority) [hereinafter "*Lockwood Warehouse*"].

## III.   MINTZ HAD A CLEAR CONFLICT OF INTEREST WHEN REPRESENTING ITS CLIENTS IN THE SEC INVESTIGATION

Ballard and its law firm collaborators argue that Mintz is barred from obtaining any more monies from the Policy for four reasons: (1) collateral estoppel; (2) the firm has been paid in full; (3) the firm did not obtain a valid waiver of conflict or represented clients when there was an unwaivable conflict of interest; and (4) the firm has unclean hands.[11] (*See* ECF No. 76.) For the reasons stated below, Ballard's collateral estoppel is inapplicable and there are material facts in dispute as to whether Mintz has been paid in full, obtained a valid waiver, or had unclean hands. However, Mintz did have a clear unwaivable conflict of interest when representing its clients in the SEC Investigation and thus Mintz violated its ethical duties. Therefore, Mintz is not entitled to any additional payment from the remaining funds.[12]

---

[11] Ballard's motion is the primary summary judgement motion. Not only do Obermayer and Carter join Ballard's motion in part, but Ballard's motion is larger in scope than Carter LLP's motion and encompasses the arguments raised by Carter LLP. (*Compare* ECF No. 76 *with* ECF Nos. 83 and 92.) Also, Mintz's opposition to Ballard's motion largely tracks its opposition to Carter's motion and its own motion for summary judgment. (*See* Mintz's Mem of Law in Opp. to Mot. for Summ. J., ECF No. 112.) So, all parties' contentions can be fairly considered when solely addressing Ballard's arguments for why Mintz is not entitled to the remaining proceeds.

[12] It is improper in this decision to decide Ballard's contention that it is entitled to full payment for its legal services. Obermayer opposed this part of Ballard's motion because "the only fair and just outcome would be to prorate all such claims in the same proportion so as to satisfy all legitimate claims." (Response to Obermayer's Mot. for Summ. J., ECF No. 101, at 1.) Obermayer's point is fair. Thus, it is improper to address whether Ballard is entitled to all of its outstanding fees until all parties can be heard on this issue.

## A. Any Preclusive Effect of Prior State Court Proceeding is Inapplicable

Ballard contends that collateral estoppel bars Mintz from any additional monies from the Policy.[13]   Collateral estoppel is an "equitable doctrine…[that] precludes a party from relitigating…an issue raised in a prior action or proceeding and decided against that party or those in privity." *Buechel v. Bain*, 97 N.Y.2d 295, 303 (N.Y. 2001). The doctrine bars relitigation when there is (1) an identical issue, "which has necessarily been decided in the prior action and is decisive of the present action;" and (2) the party to be precluded had a "full and fair opportunity to contest the decision now said to be controlling." *Id.* at 304. In short, there must be an identical issue that was "actually litigated and determined." *Kaufman v. Eli Lilly & Co.*, 65 N.Y. 2d 449, 456 (N.Y. 1985). "Importantly, however, the New York Court of Appeals has declared that issue preclusion is inapplicable to pure questions of law." *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir.), *certified question accepted*, 36 N.Y.3d 1077, 166 N.E.3d 1053 (2021), and *certified question answered*, No. 73, 2021 WL 5926893 (N.Y. Dec. 16, 2021).

It is undisputed that Mintz previously brought claims in New York state court against Federal for the legal services it rendered to its clients in the SEC Investigation and related matters. The state claims sought to hold Federal contractually liable for the legal services Mintz rendered to its clients. The state court dismissed the claims in part because Mintz "lack[ed] standing to recover its legal fees under the insurance policy." *Mintz Fraade L. Firm, P.C. v. Fed. Ins. Co.*, 147 N.Y.S.3d 29, 30 (2021), *leave to appeal denied*, No. 2021-916, 2022 WL 454749 (N.Y. App.

---

[13] Mintz argues that Ballard waived this argument. However, since the doctrine is inapplicable, it is not necessary to discuss whether Ballard did in fact waive this argument.

Div. 2022) [hereinafter the "Prior New York Action."] Instead, Mintz's "sole recourse was against the insured, its client, and not its client's insurance provider." *Id.*

Ballard believes that the issue in this case is identical to the issue decided in the Prior New York Action because both address Mintz's "entitlement to the Policy [p]roceeds" from Federal. (*See* ECF No. 76 at 13.) Ballard compares Mintz's pleadings in the Prior New York Action, asserting that Federal is liable to Mintz for its legal fees, to Mintz's responsive pleadings in this case, which state that the interpleader action should proceed so Mintz can receive distribution from the funds. (*Id.*) Ballard's argument suggests that the ruling in the Prior New York Action should bar Mintz from asserting any entitlement to legal fees under the Policy unless Federal is somehow not a party to the suit. This cannot be true.

Mintz correctly highlights that Ballard's argument ignores the notable and incontrovertible differences between the two issues that make collateral estoppel inapplicable in this case. (*See* Mintz's Opp. to Ballard's Mot for Summ J., ECF No. 112 at 5-10.) Here, the immediate interpleader action "brought by [Federal], is composed of different parties, different causes of action, and different forms of relief." (*Id.* at 8.) Ballard's contentions fail to overcome these differences. Ballard is correct to the extent that the contour of these issues is similar, but there are salient differences that make the essence of the issues inapposite. This is not a contract claim brought by Mintz seeking payments from Federal notwithstanding the Policy.[14] Instead, Federal impleads Mintz and asks the Court to equitably determine how to distribute the remaining funds between Mintz and others. The Prior New York Action never determined whether an interpleader action was proper, nor whether Mintz could equitably receive any payment in an interpleader

---

[14] Ballard subtly admits this by stating, "It is uncontroverted that [Mintz] previously brought a claim seeking payment from Federal." (Ballard's Reply in Supp. of Mot. for Summ. J., ECF No. 118, 9.)

action. This is a clear failure to demonstrate that the previous issue necessarily decided is decisive of the issue in the present action. *Bain*, 97 N.Y.2d at 303. Therefore, collateral estoppel based on the Prior New York Action is inappropriate here.[15]

## B. The Purpose of Mintz's Previous Payments from Federal and PixarBio is in Dispute

Whether Mintz is barred from the remaining proceeds because PixarBio has already paid Mintz in full is unequivocally a material factual question that is in genuine dispute. (ECF No. 76 at 15-16.) The premise of this argument is the notion that the warrants issued to Mintz were compensation for the legal services Mintz provided to PixarBio. (*Id.*) Beyond self-serving declarations to support this assertion, Ballard relies on an email from Reynolds instructing Federal to not remit any further payments from the Policy to Mintz because the firm had been paid in full. (*See* ECF No. 76 at 15-16.) Federal purportedly then ceased any further payments to Mintz. (*Id.* at 16.) However, Mintz posits facts to legitimately dispute this point: the nominal value of the warrants does not cover past legal fees and PixarBio made payments on outstanding legal fees after the issuance of the last stock warrant. (ECF No. 112 at 16.) Thus, this is an issue that is not ripe for a decision at the summary judgment stage.

## C. Mintz has No Entitlement to Monies in the Policy Because of its Conflict of Interest

Ballard, and the firms joining its motion, seek to strip Mintz of any entitlement to the remaining proceeds because Mintz's legal representation in the SEC Investigation was in clear

---

[15] Collateral estoppel based on the Prior New York Action may also be inapplicable here because standing is a legal question. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 238 (2d Cir. 2016) ("The existence of standing is a question of law that we review de novo.") (citations omitted). It is true that "[f]ederal courts have used preclusion to bar litigants who have been found to lack standing in a prior suit...if the facts presented by the litigants to support standing had not changed." *Hollander v. Members of the Bd. of Regents of the Univ. of N.Y.*, 2011 U.S. Dist. LEXIS 126375, *32 (2d Cir. 2011). However, this is exactly the case in which important procedural facts are different.

defiance of its New York ethical obligations regarding conflict of interests. (*See* ECF No. 69 at 3-4; ECF No. 76 at 10-21.).

In its relevant part, New York Rules of Professional Conduct ("RPC") 1.7 provides two instances of when a lawyer should not represent a client: "(1) The representation will involve the lawyer in representing differing interests;" or "(2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." RPC 1.7(a). There is an exception to this rule with specific requirements a lawyer must comply with:

> (1) the lawyer [must] reasonably believe[] that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; *and* (4) each affected client gives informed consent, confirmed in writing.

RPC 1.7(b) (emphasis added).

There are two notable conflict of interest issues present in Mintz's representation during the SEC Investigation: (1) whether Mintz's clients had differing interests, and if so, whether Mintz obtained a valid waiver from Stromsland; and (2) whether the SEC's interest in Mintz's conduct so adversely impacted Mintz's own personal interests that it produced an unwaivable conflict.[16] (ECF No. 69 at 3; ECF No. 118 at 11-12.)

---

[16] Mintz argues that there was no conflict of interest regarding its potential ownership interests in PixarBio. However, Ballard makes clear that its contention is solely focused on Mintz's own interest in avoiding its liability. (ECF No. 118 at 11-12.)

13

*i.    Differing Interests*

Despite Mintz's contentions, its clients clearly had differing interests. "[P]erhaps the clearest instance of impermissible conflict occurs when a lawyer represents two adverse parties in a legal proceeding." *Greene v. Greene*, 47 N.Y. 2d 447, 451 (1979). The representation of multiple parties "engaged in a scheme to commit securities fraud necessarily involves the lawyer in representing different interests." (ECF No. 69 at 4.) Any contention arguing otherwise is unsubstantiated by the record.

The SEC provided Mintz notice of this direct conflict as early as February 1, 2017, in a letter describing that one of Mintz's clients already testified about his conduct and whether any of Mintz's other clients directed him to take illegal action. (ECF No. 110-4 at 14-15.) The SEC notified Mintz of these adverse interests again on April 13, 2017. (ECF No. 110-4 at 12). The proposition that there needs to be an allegation of a specific injury is misguided. Such a requirement is an analysis based on hindsight that is required in a suit for malpractice, but not a requirement to determine whether Mintz's conduct at the time should bar it from entitlement to interpleaded funds in an equitable proceeding. *See Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 211 (S.D.N.Y. 2010) ("A conflict of interest, even if a violation of the Code of Professional Responsibility, does not by itself support a legal malpractice cause of action.") (quotations omitted). Mintz's clients had at least colorable adverse interests to the extent described by the SEC. (*See* ECF No. 110-4 at 12, 14-15.) Thus, the remaining question is whether Mintz obtained a valid waiver.

Therefore, the remaining contention is whether the waiver signed by Stromsland on January 31, 2017, after April 25, 2017, and after March 29, 2018, were the products of informed consent. (See ECF No. 69 at 5-6.) To comply with the edicts of 1.7(b) and obtain a valid waiver,

14

Case 1:20-cv-04659-GBD  Document 141  Filed 03/03/22  Page 15 of 19

there must be informed consent. *See* RPC 1.7(b). Informed consent requires an attorney to conduct an investigation of the essential facts and "explain fully to each client the implications of the common representation." *Felix v. Balkin*, 49 F. Supp. 2d 260, 270 (S.D.N.Y. 1999).

It is alleged that Mintz limited their analysis of the risks inherent in the dual representation "to the purported fact that Stromsland 'did not have anything negative to say' concerning the other parties." (ECF No. 69 at 5.) Such a limited analysis would fall short of Mintz's duties under RPC 1.7(b). *See Felix*, 49 F. Supp. 2d. at 271 (finding that lawyers failed to meet the RPC 1.7(b) requirements when they the lawyers merely skimmed the available facts). Here, in construing the evidence in the light most favorable to Mintz, the record demonstrates that there is reason to believe "Mintz [] fully informed its clients of potential conflicts, provided a detailed scenario of possible risks, and received written, informed consent." (ECF No. 114 at 9.) Mintz provided the letters and emails from the SEC to Stromsland when asking him to consent to their continued representation. (ECF No. 110-4 at 10-11, 18-20, 25-26.) The record also memorialized potential verbal communications made to the client that ostensibly further informed Stromsland of the risks. (ECF No. 110-4 at 17.) Given the facts on the record and reviewing them in favor of Mintz, summary judgment declaring that Mintz did not obtain a valid waiver would be improper.

### ii. *Unwaivable conflict of interest*

The SEC's interest in Mintz's conduct produced a "significant risk that [Mintz's] professional judgment on behalf of [its clients] w[ould] [have] adversely affected [Mintz's] own...personal interests." RPC 1.7(a)(2). This means there was a "situation in which [Mintz's] own interests diverged from those of [its] client[s] present[ing] the [] core problem [that]...[Mintz's] fealty...[was] compromised." *United States v. Fulton*, 5 F.3d 605, 609 (2d. Cir. 1993).

15

Such a conflict exists whenever "the attorney has a direct interest in the subject matter of the suit." *Greene*, 47 N.Y. 2d at 452. In *Greene*, the firm representing the plaintiff had members that were former employees of the defendant and had the possibility of being held "jointly and severally [liable] for all tortious conduct" committed by the defendant. *Id.* The *Greene* court found that this created a "direct and substantial stake in the outcome of the litigation" for the law firm representing the plaintiff. *Id.*

Mintz stood in a similar position as the law firm in *Greene*. No matter Mintz's arguments trying put this issue in dispute, the record is clear. The SEC notified Mintz on February 1, 2017 that Mintz's own conduct was of interest to the agency. (ECF No. 110-4 at 14-15.) This was only a week after the SEC notified PixarBio that it was under investigation. (ECF No. 110-4 at 14-15.) Once Mintz discovered the SEC's interest, it had a substantial stake in the outcome of the investigation. Any contention otherwise defies reason. In fact, the SEC informed Mintz about its interest and warned of potential conflict of interest issues at least three additional times. (ECF No. 110-4 at 16, 25-26; ECF No. 82-1, at 6:1-18.) No reasonable lawyer would believe the SEC purposelessly provided unsolicited information.[17] Mintz had ample notice of SEC's interest in its conduct, which invariably changed Mintz's position and required it to vindicate itself. This reasonably put Mintz at odds with its clients and raised questions regarding its fealty. Thus, there was a clear conflict in which Mintz had a substantial stake in the outcome of SEC's investigation.

This conflict was also unwaivable.[18] Waivers require that "the lawyer *reasonably* believe[] that the lawyer will be able to provide competent and diligent representation to each affected client." RPC 1.7(b)(1). This requires a showing that "a disinterested lawyer would perceive no

---

[17] In fact, a named partner of Mintz testified on July 13, 2017. (*See*, ECF No. 82-1.)

[18] Whether Mintz's clients properly waived any potential conflict of interests is in dispute as noted above.

impairment of professional judgment." *Akagi v. Turin Hous. Dev. Fund Co.*, No. 13 CIV. 5258 (KPF), 2017 WL 1076345, at *15 (S.D.N.Y. Mar. 22, 2017) (quoting *Almonte v. City of Long Beach*, No. 04 Civ. 4192 (JO), 2007 WL 951863, at *5 (E.D.N.Y. Mar. 27, 2007)). Relevant here, some factors in this analysis include whether the lawyer will testify at trial, the lawyer's involvement in the underlying conduct, or the lawyer's ongoing fiduciary duty. *See Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 311 (E.D.N.Y 2010); *Cogliandro v. Nahmany*, 2005 N.Y. Misc. LEXIS 3534, *3– 4 (N.Y. Sup. Ct. 2005).

All facts weigh in favor of finding that Mintz's personal interest in the outcome of the investigation should have restrained it from taking on the representation. Mintz was in a position where it needed to vigorously defend itself, especially since the involved, named partners had an ongoing fiduciary duty to the law firm. The SEC called a named partner to testify about his knowledge of the underlying conduct, a foreseen event. (ECF No. 82-1.) The SEC's interest in Mintz culminated in a complaint against named partners, Frederick Mintz and Alan Fraade, for related securities fraud conduct. *Securities and Exchange Commission v. Henry Sargent et al.*, No. 19-cv-11416 (D. Mass.). It was unreasonable to represent PixarBio, Reynolds, and Stromsland when the SEC was so deeply interested in Mintz's role in the underlying illegal transactions. This is because a reasonable attorney would have contemplated that it required Mintz to absolve itself and prioritize its own interests.[19] Thus, this was an unwaivable conflict, which should have resulted in Mintz declining the representation. Therefore, equity determines that Mintz have no

___
[19] The *SEC v. Sargent* complaint was related to securities transactions Mintz advised PixarBio on. (*See* Answer to Compl., Ex. 2, ECF No. 10-.) While they may be unrelated to the SEC Investigation, it does demonstrate SEC's interest in Mintz's representation of PixarBio in relation to securities transactions. While it cannot be determined whether the complaint directly stemmed from any findings in the SEC Investigation, it is clear that the SEC was at least broadly investigating Mintz's representation of PixarBio.

17

further entitlement to any of the Policy proceeds before all other unconflicted Defendant law firms receive compensation.

## C. Unclean Hands

Ballard's last contention that the doctrine of unclean hands also bars Mintz's from the interpleaded funds is inapplicable because it does not meet the doctrine's requirements. (*See* ECF No. 76 at 21-22.) The doctrine is available in interpleader actions because interpleader is an equitable remedy. *See William Penn Life Ins. Co. v. Viscuso*, 569 F. Supp. 2d 355, 362 (S.D.N.Y 2008) ("[I]interpleader is fundamentally an equitable remedy…the rule that one who seeks equitable relief must come into court with unclean hands applies."). The doctrine requires "a finding of wrongful intent or willful misconduct" whereas "mere negligent conduct" does not suffice. *Viscuso*, 569 F. Supp. 2d 355 at 362 (quoting *A.H. Emery Co. v. Marcan Prods. Corp.*, 389 F.2d 11, 18 n. 4 (2d Cir.1968)). There must be a party "(1) "'guilty of conduct involving fraud, deceit, unconscionability, or bad faith'" that is (2) "'related to the matter at issue to the detriment of the other party.'" *Viscuso*, 569 F. Supp. 2d at 362 (quotations omitted).

Ballard relies on SEC's complaint in *SEC v. Sargent* to demonstrate that it meets these requirements. (ECF No. 76 at 22.) However, no matter what the complaint says, the doctrine requires a demonstration of "guilty conduct." A complaint does not determine guilt.[20] A complaint simply is the accusation of guilt. Ballard has put forward no evidence demonstrating Mintz's fraudulent guilt that relates to the SEC Investigation of its clients. Thus, this argument fails, and the unclean doctrine is inapplicable.

---

[20] In *SEC v. Sargent*, Mintz and Fraade entered a Final Judgment "without admitting or denying the allegations of the Complaint." (Declaration of David L. Axelrod, Ex. Y, ECF No. 75-26, at 1.)

18

## IV.    CONCLUSION

Ballard's motion for summary judgment, (ECF No. 72), which Carter and Obermayer

join, (ECF No. 83 and 92), is GRANTED to the extent that Mintz has no entitlement to the

interpleaded funds because of a conflict of interests regarding its personal stake in the SEC

Investigation. Mintz's motion for summary judgment, (ECF No. 84), is DENIED. Carter's

independent motion for summary judgment, (ECF No. 66), is DENIED. The Clerk of Court is

directed to close the motions accordingly.

Dated: New York, New York
       March    , 2022

**MAR ᵁ 3 2022**

SO ORDERED:

George B. Daniels

GEORGE B. DANIELS
United States District Judge

19